SCHENCK, PRICE, SMITH & KING, LLP
220 Park Avenue
Florham Park, New Jersey 07932
(973) 539-1000
Attorneys for Plaintiff
NEWARK BOARD OF EDUCATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWARK BOARD OF EDUCATION, | : |
| | : |
| PLAINTIFF, | : Civil Action No. _____ |
| | : |
| | : **COMPLAINT** |
| V. | : |
| | : |
| J.S. o/b/o T.R., | : |
| | : |
| DEFENDANT. | : |

Plaintiff, the Newark Board of Education, a body corporate organized and existing by and through N.J.S.A. 18A:10-1 et seq., with its principal office at 765 Broad Street, Newark, Essex County, New Jersey, by way of complaint against Defendant J.S. on behalf of minor child T.R., hereby alleges and says:

### JURISDICTION

This Court has jurisdiction to hear and determine this action pursuant to 28 U.S.C. §1331 as it involves a question of federal law. Specifically, jurisdiction is conferred over Plaintiff's appeal from the decision and order of an administrative law judge pursuant to the Individuals with

Disabilities Education Improvement Act (IDEIA) of 2004, 20 U.S.C. §1400 et seq.

## VENUE

Venue in this Court is proper pursuant to 28 U.S.C. 1391 (b), as all parties hereto reside within this Judicial District, and all facts and circumstances giving rise to the claim occurred within the jurisdictional boundaries of this District.

## PARTIES

Plaintiff, the Newark Board of Education (hereinafter "Plaintiff", "Board", or "School District"), operates a public school system within the State of New Jersey, Essex County, and receives federal funds in connection with its obligation to provide special education programs and related services for students with disabilities pursuant to 20 U.S.C. §1400 et seq.

Defendant J.S. ("Defendant") is, upon information and belief, the parent and natural guardian of T.R. ("T.R."), a student enrolled in the Board's public schools.

## FACTS

### T.R.'s Special Education Program

1. T.R. is a twelve year old student diagnosed with Schizencephaly, a disability characterized by developmental delay, cognitive deficits, poor muscle tone, seizures, and

significantly impaired communicative abilities.

2.    T.R. is classified as eligible for special education and related services pursuant to the IDEIA under the category of "multiply disabled".

3.    During the 2019-2020 school year, T.R. attended school in a classroom for students with multiple disabilities at Fourteenth Avenue School, a specialized school for students with disabilities within the School District.

4.    On or about June 4, 2020, after the School District ceased in-person instruction and began remote instruction pursuant to New Jersey Executive Order #104 (2020), T.R.'s IEP Team, including Board staff and Defendant, developed an Individualized Education Program ("IEP") for the remainder of the 2019-2020 school year and the 2020-2021 school year. That IEP continued T.R.'s placement in a multiply-disabled class at Fourteenth Avenue School.

5.    At the beginning of the 2020-2021 school year, T.R.'s child study team case manager determined that T.R. should be re-evaluated and a review of her then-current educational programming undertaken.

6.    On September 23, 2020, the Board forwarded to the

Defendant an invitation to a meeting for the purposes of discussing the anticipated re-evaluation process.

7.    The parties met on September 28, 2020 at a re-evaluation planning meeting, at which time it was determined that T.R. would undergo a comprehensive re-evaluation which would identify T.R.'s needs and further inform her educational program. Defendant provided written consent for the Board to conduct the evaluations.

**Defendant's Due Process Petition, the Board's Response and Proposed Change in Program**

8.    Despite having just agreed to a re-evaluation of the student, on or about September 30, 2020, Defendant filed a due process petition with the New Jersey Department of Education Office of Special Education Programs entitled J.S. o/b/o T.R. v. Newark Board of Education and bearing Agency Reference Number 2021-32267 and OAL Docket Number EDS 10309-20 ("Petition").

9.    The Petition alleged only that Defendant sought a "private placement at specialized school [sic] in a class accommodating cognitive disability." It did not allege any claim that the District had failed to provide T.R. with a free appropriate public education ("FAPE"), nor did it include any claim for compensatory education.

10.   At  no  time  after  filing  the  Petition  did  Defendant seek  Plaintiff's  consent  to  amend  the  Petition  to  include  a claim  for  compensatory  educational  services.  At  no  time  was  an order  issued  permitting  Defendant  to  do  so.

11.   At  no  time  after  the  filing  of  the  Petition  was  the Board  provided  with  the  statutory  resolution  period  to  resolve any  of  Defendant's  alleged  concerns  relative  to  a  claim  of compensatory  educational  services  as  required  by  20  U.S.C. §1415(c)(2)(E)  and  N.J.A.C.  §6A:14-2.7(h)(11)(i).

12.   The  IEP  in  effect  at  the  time  of  filing  of  the Petition  was  the  June  4,  2020  IEP.

13.   The  child  study  team  evaluations  were  conducted  in  the fall  of  2020  and  consisted  of  a  psychological  assessment,  an educational  assessment,  an  assistive  technology  assessment,  a physical  therapy  assessment  and  a  behavioral  evaluation.

14.   The  Board  filed  its  Answer  to  the  Petition  on  or  about November  6,  2020.

15.   The  matter  was  transmitted  to  the  New  Jersey  Office  of Administrative  Law  and  assigned  to  the  Honorable  Andrew  M. Baron,  Administrative  Law  Judge  (the  "ALJ"  or  "ALJ  Baron")  for hearing.

16.    In December of 2020, the School District sent written notification to Defendant scheduling a meeting for January 15, 2021 for the purpose of discussing the student's evaluations and revising her IEP.

17.    Although the Defendant adjourned the initial meeting, the IEP team, including the Defendant and her advocate, met on January 27, 2021, and determined that T.R. remained eligible for special education services but a change in placement was warranted.

18.    The IEP developed for T.R. at the January 27, 2021 IEP meeting (the "January 2021 IEP") provided for placement at New Jersey Regional Day School ("NJRDS"), another specialized school within the School District for students with disabilities, which provided, among other supports, more robust transition/life skills programming for its students.

19.    The January 2021 IEP also included special education programming designed to meet T.R.'s educational needs, including the related services of speech/language therapy, physical therapy, augmentative communication support, the support of a behaviorist and a personal aide, and other accommodations and modifications.

20.    In February of 2021, prior to commencement of the

hearing, ALJ Baron held a telephonic conference during which the January 27, 2021 IEP and meeting were discussed.

21. During that conference, Defendant complained that the School District had not offered any placement other than NJRDS, prompting ALJ Baron to "order" the School District to show the Defendant alternative, out of district placements.

22. Despite its conviction that placement at NJRDS was appropriate and the least restrictive placement in which T.R.'s educational needs could be met, the School District was required to abide by the ALJ's order. Therefore, T.R.'s records were forwarded to, among other placements, Academy 360, a private school for students with disabilities.

23. Although Academy 360 provided a preliminary "acceptance" of the student, the child study team was not in agreement with placing T.R. at any of out-of-district school when there was a less restrictive placement that met her individual educational needs. Defendant, for the remainder of the proceedings in front of the ALJ, maintained that T.R. required placement at Academy 360.

24. T.R.'s "stay-put" placement, as reflected in the June 2020 IEP, was the multiply disabled classroom at Fourteenth Avenue School, which she attended remotely beginning in

September of 2020.

25.   When the School District returned from remote to in-person instruction on March 9, 2021, Defendant complained that T.R. was not in her prior teacher's class, despite the fact that T.R. had been attending her proscribed program, with a different teacher since September of 2020.

26.   During the course of a March 2021 telephonic settlement conference call with the ALJ, Defendant insisted that T.R. be returned to her prior teacher's class.

27.   Despite legal authority establishing that methodology and personnel decisions are left to the sole discretion of a school district, ALJ Baron "ordered" the School District to return T.R. to her prior teacher's class.

28.   The School District was again obliged to comply with the ALJ's order and returned T.R. to her prior teacher's class two weeks later.

29.   At no time during the 2020-2021 school year, was T.R. without the programming required under the June 4, 2020 IEP nor was there any time during the 2020-2021 school year during which she was deprived of any services proscribed by the June 4, 2020 IEP.

30.   Thereafter, during an April 22, 2021 telephonic conference call, the ALJ admonished the District for having "taken so long" to move T.R., despite the fact that the move required the School District to relocate another student out of that teacher's class in order to accommodate T.R.'s presence.

31.   T.R. remained in her prior teacher's multiply disabled class at Fourteenth Avenue School through the end of the 2020-2021 academic year.

32.   In June 2021, the School District proposed, and Defendant eventually agreed, that T.R. would attend school at NJRDS for the 2021 summer and participate in that school's extended school year (ESY) program.

33.   T.R. attended and participated in NJRDS's ESY program from July 13, 2021 through August 13, 2021.

**The OAL Hearing**

34.   The ALJ did not issue a pre-hearing order framing the issue(s) to be tried.

35.   Although Defendant's Petition challenged the June 2020 IEP, ALJ Baron focused the hearing on the appropriateness of the January 27, 2021 IEP.

36. At no time after filing the Petition did Defendant seek Plaintiff's consent to amend the Petition to include a challenge to the January 2021 IEP. At no time was an order issued permitting Defendant to do so.

37. At no time after the filing of the Petition was the Board provided with the statutory resolution period to resolve any of Defendant's alleged concerns relative to the January 2021 IEP, as required by 20 U.S.C. §1415(c)(2)(E) and N.J.A.C. §6A:14-2.7(h)(11)(i).

38. The hearing was held on May 19, 2021, May 21, 2021, June 6, 2021, June 11, 2021, June 16, 2021, July 20, 2021, and July 22, 2021, at which time the record closed.

39. At the hearing, the Board presented the testimony of six expert witnesses who attested to, among other matters, the appropriateness of T.R.'s IEP and her placement at NJRDS.

40. Defendant proffered no expert witnesses or expert reports supporting her position that any IEP offered to T.R. by the Board was inappropriate or that placement at NJRDS was improper.

41. At no time during the course of the hearing did Defendant call any expert witness, nor did Defendant present any

competent documentary evidence, to describe the program that would be provided to T.R. at Academy 360 or any program that would be appropriate for T.R.

42. In contrast, the Board presented the testimony of Stacey Tate, a certified learning disabilities consultant, who was admitted as an expert and testified as to T.R.'s educational needs and that the January 2021 IEP was appropriate for T.R. and designed to confer a meaningful educational benefit upon her.

43. The Board also presented the testimony of Jamal Gibbs, a certified school psychologist, who was admitted as an expert and testified as to T.R.'s educational needs and that the January 2021 IEP was appropriate for T.R. and was designed to confer a meaningful educational benefit upon her.

44. The Board also presented the testimony of Rachel Colamenco, a certificated and licensed physical therapist, who was admitted as an expert and who testified to T.R.'s educational needs and that the January 2021 IEP was appropriate for T.R. and was designed to confer a meaningful educational benefit upon her.

45. The Board also presented the testimony of Adam DiDonna, a certified speech and language pathologist who was admitted as an expert and who testified as to T.R.'s educational

needs and that the January 2021 IEP was appropriate for T.R. and was designed to confer a meaningful educational benefit upon her.

46.   Finally, the Board presented the testimony of Jennifer Mitchell, Principal of NJRDS, who possesses a State-issued teacher of the handicapped certification and principal's certification, who testified as to the proposed program at NJRDS, her interactions and observations of T.R. during the student's in-person intake at NJRDS and the manner in which NJRDS' program met T.R.'s individual educational needs and was designed to confer a meaningful educational benefit upon her.

47.   Despite Ms. Mitchell's unchallenged credentials, the ALJ erroneously refused to admit Ms. Mitchell as an expert witness.

48.   All of the expert witnesses who appeared before the ALJ, and Ms. Mitchell, testified unanimously that the proposed IEP and placement at NJRDS were appropriate and would meet T.R.'s individual educational needs.

49.   ALJ Baron found the testimony of all of the foregoing witnesses to be credible.

50.   Despite indicating that the hearing would "focus on"

the appropriateness of the January 2021 IEP, the ALJ repeatedly questioned the Board's witnesses about events and issues that were relevant *only* to the June 4, 2020 IEP.

51.  Defendant presented only the testimony of T.R.'s parents, J.S. and T.R., neither of whom were qualified as experts.

52.  Defendant did not offer, and the ALJ did not receive, any testimonial or documentary evidence regarding the educational program or related services that T.R. would receive at Academy 360, even though Academy 360 had provided a preliminary indication that they could educate the student.

53.  The ALJ did not receive any testimonial or competent documentary evidence that Academy 360 could either provide the programming set forth in the January 2021 IEP or any other programming specifically tailored to T.R.'s educational needs.

54.  In fact, the only evidence relating to Academy 360 offered by Defendant was a "brochure" or website "printout" providing a general description of programming offered by Academy 360. No witness was proffered to authenticate the "brochure" or to provide the requisite foundation for this documentary evidence.

55. Nothing in the brochure or the website printout was specific to the educational program or services T.R. would receive at Academy 360.

56. Prior to the hearing itself, specifically prior to any testimony being taken or any documents being offered into evidence, it was clear that ALJ Baron had pre-judged the matter, as he ordered the Board to send records to "other placements" despite the Board's offer of a placement that it considered appropriate.

57. In ordering the Board to forward records to "other placements," the ALJ broadcast his belief that Defendant should have been provided with "choices" of schools, a "conclusion" also stated in his ultimate decision.

58. During the course of the hearing, the ALJ repeatedly questioned and cross-examined witnesses, not for the purpose of obtaining clarity on an issue, but rather in support of the Defendant's effort to establish a basis on which to order T.R.'s placement at Academy 360.

59. By way of example, despite the fact that the January 2021 IEP provided for an alternative augmentative communication device ("AAC") and the fact that the speech and language pathologist who provided testimony describing the device had not

previously serviced T.R., the ALJ questioned this witness as to why the AAC had not been specifically included in T.R.'s *prior* IEP.

60. Although the Defendant did not call T.R.'s prior teacher as a witness, the ALJ repeatedly commented upon the fact that this individual had not been called by the School District, even though that teacher had not been present at the January 2021 IEP meeting and could only provide testimony as to events that had occurred *prior* to June 2020.

61. Despite hearing testimony from six educational professionals whom the ALJ found credible, the ALJ repeatedly speculated as to the *possible* testimony of this prior teacher, indicating that the individual "*apparently* had a different opinion about T.R.'s needs," when no record evidence supported such speculation.

62. The ALJ admonished the Board's witnesses for failing to speak with T.R.'s former teacher, although the record established that the June 2020 IEP and the January 2021 IEP both contained information provided by that teacher as to the student's functioning.

63. On September 3, 2021, ALJ Baron issued a Decision and Order, made final pursuant to 20 U.S.C. §1415(i)(1)(A) and 34

C.F.R. §300.514 ("Decision"), which stated that the "District failed to meet its obligations to T.R. under FAPE, and IDEA" and ordered T.R.'s placement at Academy 360 for the 2021-2022 school year as "compensatory" education.

**The ALJ's Decision**

### Minimal Findings of T.R.'s Educational Needs

64. Despite significant expert testimonial and non-testimonial evidence establishing T.R.'s educational needs in various areas, ALJ Baron made minimal findings as to these needs and failed to analyze whether the January 2021 IEP provided the requisite programming to address those individual needs.

65. For example, the record evidence, including the educational evaluation, psychological assessment, physical therapy assessment, speech and language evaluation, and the behavioral assessment conducted by the District established that T.R. had educational needs in each of these areas.

66. The Decision however reflects only the ALJ's "findings" that "T.R. required the use of an AAC", that she had "cognitive challenges" and "multiple language and learning and intellectual disabilities."

67. The Decision also reflects the ALJ's "finding" that

the January 2021 IEP proposed the use of, and training for, an AAC for T.R. as well as for the Defendant and T.R.'s teachers and aides.

68.  ALJ Baron accepted, and credited, the testimony of the Board's speech and language pathologist as to T.R.'s need for this device, the expert's explanation as to how it was to be utilized within T.R.'s programming and the basis for the provision of speech and language therapy services as reflected in the January 2021 IEP.

69.  While the ALJ credited the testimony of the Board's certified physical therapist, that T.R. required physical therapy to access her educational programming, and the non-testimonial evidence established that the January 2021 IEP provided for physical therapy services, the Decision reflects no findings as to T.R.'s needs in this area or whether the physical therapy services that were to be provided under the IEP were appropriate.

70.  Although the ALJ recites the results of the educational and psychological evaluations, noting that T.R.'s educational scores were all in the "Very Low Deficient" range, including her scores in oral reading, reading vocabulary, applied problems, calculations, writing samples, math facts

fluency, sentence reading, sentence writing, number matrices, reading recall and spelling, the Decision suggests that by "not disputing" these results, the District somehow admits that T.R. had not received FAPE.

71.  The foregoing statement contained within the Decision demonstrates the ALJ's wholesale disregard of the testimony of the Board's experts, whom he found credible, that T.R.'s scores had to be considered in relation to the student's overall potential which was also in the Very Low range.

72.  The record evidence also established that the proposed placement offered T.R. specialized instruction designed for her educational levels, including multi-sensory reading, and writing programs, a specially designed math program, social skills training, physical therapy, speech therapy, and verbal behavioral supports both in and out of the classroom, a personal aide, and daily transportation to and from school.

73.  The Defendant did not offer, and the ALJ did not receive, any expert or other competent evidence to contradict any of the testimonial or non-testimonial evidence offered by the Board to suggest that T.R.'s scores were not reflective of her potential or that the goals and objectives set forth in the January 2021 IEP were inappropriate.

74. Notably, the record further established that the January 2021 IEP included goals in the areas of math, reading, writing, social and emotional learning, physical therapy, and speech/language and communication and the record evidence demonstrated that these goals were appropriate for T.R. to make meaningful educational progress in her program.

75. Nevertheless, ALJ Baron determined, with no record evidence to support the conclusion, that T.R. lacked the pre-requisite skills to advance on any of the goals and objectives stated in the January 2021 IEP.

76. While the ALJ credited the testimony of Rachel Colamenco, a certified physical therapist, who indicated that T.R. required physical therapy to access her educational programming, he made no findings relative to T.R.'s physical therapy needs.

77. The record evidence also established that the January 2021 IEP provided physical therapy services to T.R., however the ALJ failed to analyze and, in fact, drew no conclusions as to the appropriateness of the physical therapy services offered to T.R. under the January 2021 IEP.

78. The foregoing evidence directly contradicts the ALJ's conclusion that the January 2021 IEP was not reasonably

calculated to bestow a meaningful educational benefit on T.R.

79. The Decision rests entirely upon findings of procedural violations, with no finding that the January 2021 IEP failed to confer FAPE or a meaningful educational benefit upon T.R., and no finding of any impediment to Defendant's ability to participate in the decision making process.

80. The ALJ's findings of procedural violations are unsupported by, and indeed contrary to, the record evidence presented and established case law. The erroneous findings of procedural violation include the following:

**Combined eligibility/IEP meeting**

81. On page 13 of the Decision, the ALJ erroneously concluded that the manner in which the District "prepared and conducted" the combined re-evaluation/IEP meeting in January 2021 was improper, leading to a "lack of trust" on the part of T.R.'s parents.

82. N.J.A.C. 6A:14-2.3(k) provides that "meetings to determine eligibility and develop an IEP shall be combined, if feasible," as long as the parent is provided appropriate notice.

83. The record evidence established that Defendant was provided appropriate notice of the meeting, which notice

indicated the following actions were to be taken at the meeting: an annual review of T.R.'s IEP, a review and revision to T.R.'s IEP, the interpretation of evaluative results, and a determination of T.R.'s continuing eligibility for services.

84. The record evidence further established that Defendant attended the January 2021 IEP meeting, accompanied by her advocate, and expressed no concerns over the fact that the eligibility and IEP meetings were combined.

85. The ALJ made no finding that the Board failed to provide Defendant with appropriate notice of the purpose of the meeting.

86. The ALJ made no finding that the combined eligibility/IEP meeting deprived the Defendant of meaningful participation in the planning process.

87. Thus, the ALJ erroneously concluded that the January 2021 IEP failed to confer a meaningful educational benefit on T.R. on the basis that the eligibility/IEP meeting was "combined."

**Meeting Attendees**

88. On page 13 of the Decision, the ALJ erroneously found that the presence of Ms. Mitchell at the IEP meeting, without

the consent of the Defendant, led to a "lack of trust" on the part of the Parent.

89. N.J.A.C. 6A:14-2.3(k)(2)(vi) requires that the IEP team include a representative of the board of education who is qualified to provide or supervise the provision of special education, knowledgeable about the general education curriculum, and knowledgeable about the availability of resources of the board of education.

90. N.J.A.C. 6A:14-2.3(k)(2)(vii) permits the attendance at IEP meetings of "other individuals who have knowledge or special expertise" at the discretion of the parent or board of education.

91. There is no requirement to obtain a parent's consent to include additional participants in a meeting.

92. Ms. Mitchell, as principal of NJRDS, was the representative of the board of education who was knowledgeable about, and authorized to commit resources to, the program that was being proposed at the January 2021 IEP meeting.

93. The record evidence established that Defendant attended the January 2021 IEP meeting, accompanied by her advocate, and expressed no concerns over Ms. Mitchell's

presence.

94.    The record further evidence established that Defendant attended the January 2021 IEP meeting, accompanied by her advocate, and fully participated in the IEP meeting.

95.    The record evidence also established that Ms. Mitchell's presence at the IEP meeting did not impede Defendant's participation in the decision-making process.

96.    The ALJ made no finding of fact, and the record is void of any evidence to support a finding, that Ms. Mitchell's presence at the IEP meeting impeded Defendant from participating in the IEP meeting.

97.    The ALJ made no finding of fact, and the record is void of any evidence to support a finding, that Ms. Mitchell's presence at the IEP meeting impeded T.R.'s right to receive FAPE.

98.    Thus, the ALJ erroneously concluded that the January 2021 IEP failed to confer a meaningful educational benefit on T.R. on the basis that Ms. Mitchell attended the January 2021 IEP meeting.

99.    The ALJ also erroneously concluded that the January 2021 IEP failed to confer a meaningful educational benefit on

T.R. on the basis that the Defendant "lacked trust" in the School District on the basis of Ms. Mitchell's presence at the January 2021 IEP meeting.

### Failure to Offer "Other Alternatives"

100. On page 13 of the Decision, the ALJ found that no "other options" were explored by the District and therefore erroneously concluded that the District had "pre-determined" T.R.'s placement in violation of the IDEIA.

101. The IDEIA imposes no requirement that a school district offer a parent "multiple options" for an appropriate educational program.

102. To the contrary, once a school district identifies an appropriate educational program in the least restrictive environment in which the program can be provided, the IDEIA imposes an affirmative obligation to place the student in that program *before* exploring other alternatives.

103. The fact that a school district comes to an IEP meeting with a draft IEP, before consulting the parent, does not render the IEP "predetermined," nor does it mean the parent has been denied an opportunity for meaningful participation in the decision-making process.

104. To satisfy the meaningful participation requirement of the IDEIA, a child study team must listen to a parent's concerns and permit parental involvement, but it is not required to agree with the parent and it is not prohibited from attending the meeting prepared to present its recommendations with a draft IEP.

105. Page 5 of the January 2021 IEP reflected the Parent's concerns regarding the Fourteenth Avenue placement as being "too difficult academically" for T.R., the need to focus on T.R.'s communication, and her desire for an out-of-district placement.

106. The record evidence also established that, partly in response to Defendant's concern that the Fourteenth Avenue program was "too difficult," the child study team changed T.R.'s placement to NJRDS.

107. With respect to a need to focus on T.R.'s communication, the January 2021 IEP included the provision of an AAC for T.R. as well as associated software and training on the device for T.R.'s teachers and speech and language therapy to address T.R.'s communication and language needs.

108. Accordingly, the record evidence established that the School District considered the Defendant's concerns and adjusted T.R.'s programming based on those concerns.

109. The fact that a child study team disagrees with a parent, or fails to accept a parent's recommendations, does not mean the parent has been denied an opportunity for participation in the decision-making process.

110. The ALJ made no finding that the failure to offer Defendant "multiple options" deprived Defendant of her right to participate in the decision-making process. Nor does any evidence in the record support such a finding.

111. The ALJ made no finding that the failure to offer Defendant "multiple options" deprived T.R. of FAPE. Nor does any evidence in the record support such a finding.

112. The ALJ made no finding that the failure to offer Defendant "multiple options" resulted in any failure to provide meaningful educational benefit to T.R. Nor would any evidence in the record have supported such a finding.

113. The ALJ erred in concluding that the failure to offer "other options" for programming was a procedural error.

114. The ALJ further erred in concluding that a failure to offer "other options" was a sufficient basis on which to find that the January 2021 IEP failed to confer a meaningful educational benefit upon T.R.

**Incorrect Standard**

115.    While a school district is not required to maximize the potential of a student, it must offer an IEP that is reasonably calculated to enable the student to obtain significant learning as gauged in relation to his or her potential; the inquiry does not allow for a comparison of the proposed program to a parent's requested program.

116. The Decision reflects that ALJ Baron employed an incorrect standard throughout the course of the hearing and in determining that the January 2021 IEP failed to confer FAPE upon T.R.

117. Specifically, at page 9 of the Decision, the ALJ states, "[T]he program both parents seek, which was never addressed at the IEP meeting, was the program offered at Academy 360 (also known as Spectrum 360), which is *more of* a cognitive program."

118. The ALJ made no finding of fact as to the constitution of a "cognitive program," nor is there any competent evidence in the record to suggest that T.R. required a "cognitive program" or that Academy 360 would provide such a program. Neither the IDEIA nor the New Jersey Administrative Code recognize the term "cognitive program."

119. The foregoing demonstrates that ALJ Baron engaged in a comparison of programs rather than undertaking the necessary analysis of the student's individual educational needs and whether the January 2021 IEP offered those services and programs which would permit T.R. to make meaningful educational progress on those deficits.

120. The Decision also reflects the ALJ's erroneous refusal to allow Ms. Mitchell to testify as to the "recommendations and supports for T.R. to *thrive.*"

121. The standard to be employed in measuring the substantive adequacy of an IEP is whether the student will make meaningful educational progress in light of the student's potential, not whether the student would "thrive" with such programming.

122. Finally, on page 14 of the Decision, the ALJ references the fact that the Plaintiff is an "*Abbott* District" and engaged in a discussion of the constitutional requirement of "*Abbott* Districts" to provide a thorough and efficient education to the students of the District, stressing the need for those districts to provide for the special education needs of their students in order to "redress the extreme disadvantages such children face".

123. At no point in the hearing was evidence entered into the record relative to the Board's status as an Abbott District or the requirement to provide a thorough and efficient education, nor would such evidence have been relevant to the determination of whether the proposed IEP was appropriate for T.R.

124. The "thorough and efficient" standard does not equate to the free and appropriate standard to be employed in the analysis of a student's individualized, special education needs.

125. The ALJ erroneously concluded that the January 2021 IEP failed to confer FAPE on T.R. by employing the incorrect legal standard.

**Least Restrictive Environment**

126. Through its experts, the Board argued, throughout the course of the hearing, that NJRDS represented the least restrictive placement where T.R.'s educational needs could be met.

127. The ALJ found the experts credible.

128. The Defendant did not offer any testimony, much less any expert testimony, and the ALJ received no evidence to suggest that Academy 360 would provide a less restrictive

environment than NJRDS.

129. The Decision fails to address Plaintiff's argument that NJRDS represented the least restrictive environment for T.R. To the contrary, the Decision demonstrates that the ALJ failed to conduct any, much less the requisite, analysis of whether and where T.R.'s individual, educational needs could be met.

### Compensatory Education

130. Finally, while the ALJ maintained that the hearing "focused on" the appropriateness of the January 2021 IEP, the Decision is based exclusively upon the ALJ's conclusion that T.R. was owed compensatory services for events that occurred prior to the creation of the January 2021 IEP.

131. In determining whether a student is owed compensatory educational services, an ALJ must make determinations as to what services were required and what services were not provided, quantify the deficit in services, and determine the impact of that deficit upon the student's programming.

132. The ALJ's only basis for ordering compensatory services can be found on page 13 of the Decision, which states that there is "no way" in which to measure T.R.'s regression due to the pandemic.

133. There is no competent evidence in the record that remotely established T.R.'s "regression" during remote instruction.

134. In fact, as the hearing "focused on" the January 2021 IEP, there was no evidence offered as to T.R.'s levels of performance prior to, during or after remote instruction. Indeed, the Petition was void of any such claim.

### The Student's Current Educational Placement

135. While the District has attempted to implement the Decision by placing T.R. at Academy 360, by the time the Decision issued, that placement was no longer available. By agreement of the parties, T.R. presently attends a multiply disabled class at Fourteenth Avenue School and is receiving the supports and services set forth in the January 2021 IEP.

## FIRST COUNT

**The ALJ erred in considering the appropriateness of the January 2021 IEP without the Board's consent or an order permitting Defendant to amend the Petition, in violation of 20 U.S.C. §1415(c)(2)(E) and N.J.A.C. §6A:14-2.7(h)(11)(i).**

136. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 135 and incorporates same as if fully set forth herein.

137. 20 U.S.C. §1415(c)(2)(E) provides that a party may amend its due process complaint only if the other party consents in writing to such amendment and is given the opportunity to resolve the complaint or the hearing officer grants permission for the amendment not later than five days before the hearing.

138. N.J.A.C. §6A:14-2.7(h)(11)(i) permits amendment of a due process petition only with the consent of the school district or by order of an administrative law judge provided that such amendment is made not later than five days before the hearing.

139. Findings of fact regarding events which occurred months or years before placement decisions are made cannot substitute for the threshold determination of whether the IEP at issue offered the student FAPE.

140. By failing to issue a pre-hearing order setting forth

the issue(s) to be considered during the course of the administrative proceeding, ALJ Baron confused the issues to be tried and facts presented, thereby depriving the Board of the opportunity to present witnesses on the issues he ultimately found to be relevant to his determination, including T.R.'s prior programming, progress and/or regression.

141. The ALJ erred by allowing the hearing to proceed with respect to the January 27, 2021 IEP without the Board's consent or an order permitting amendment of the Petition.

142. The ALJ erred by considering claims outside those stated in the Petition in determining that T.R. was owed compensatory services.

143. The conduct of the administrative hearing and resulting Decision violated the explicit terms of 20 U.S.C. §1415(c)(2)(E) prohibiting the consideration of matters or issues outside those raised in the Petition without the consent of the school district or an order of the Court.

144. The conduct of the administrative hearing and Decision violated the explicit terms of N.J.A.C. 6A:14-2.7(h)(11)(i) prohibiting the consideration of matters or issues outside those raised in the Petition without the consent of the school district or an order of the Court.

## SECOND COUNT

**The ALJ erred in concluding that procedural violations resulted in a failure to provide FAPE.**

145. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 144 and incorporates same as if fully set forth herein.

146. In determining whether a local educational agency ("LEA") provides a student with FAPE, the hearing officer must consider (i) whether the LEA complied with the procedures set forth in the IDEIA; and (ii) whether, on a substantive level, the IEP was calculated to enable the child to receive a meaningful educational benefit.

147. In determining whether an LEA has complied with the procedures set forth in the Act, the hearing officer may find a violation of IDEIA only if the established procedural inadequacies impeded the child's right to FAPE, significantly impeded the parents' opportunity to participate in the decision making process or caused a deprivation of educational benefits.

148. Substantively, a school district satisfies FAPE by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.

149. In a matter in which a parent alleges failure to provide FAPE, the administrative hearing officer is tasked with determining the student's individual educational needs, the requisite services to meet those needs, and whether the IEP offered by the school district would provide for services which would allow the student to make significant, meaningful educational progress with respect to those needs.

150. The Decision fails to meet these requirements.

151. The ALJ erred in concluding that the manner in which the IEP/eligibility meeting was combined was a procedural violation of the IDEIA.

152. The ALJ erred in concluding that the manner in which the IEP/eligibility meeting was combined deprived T.R. of FAPE.

153. The ALJ erred in concluding that the manner in which the IEP/eligibility meeting was combined deprived the Defendant of the opportunity for meaningful participation in the decision making process.

154. The ALJ erred in concluding that the January 2021 IEP failed to confer FAPE as a result of Ms. Mitchell's presence at the meeting without any finding that such presence deprived T.R. of FAPE or impeded Defendant's participation in the decision

making process, and without any factual basis for such a finding.

155. The ALJ erred in concluding that the School District "predetermined" the January 2021 IEP.

156. Finally, the ALJ erroneously concluded that the January 2021 IEP failed to confer FAPE because the child study team had not offered "multiple options," without any finding that failing to offer "multiple options" deprived T.R. of FAPE, impeded Defendant's participation in the decision making process, or resulted in a lost educational benefit for T.R., and without any factual basis for any such a findings.

157. In concluding that the School District failed to offer T.R. FAPE on the basis of the foregoing alleged procedural violations, the ALJ improperly substituted his own judgment for that of the Board's experts with respect to T.R.'s educational needs, the requisite services, and the appropriateness of the IEP offered by the Board.

## THIRD COUNT

**The ALJ failed to employ the correct standard, in determining the substantive appropriateness of the January 2021 IEP.**

158. Plaintiff repeats and reiterates the allegations set

forth in Paragraphs 1 through 157 and incorporates same as if fully set forth herein.

159. An IEP must contain a description of the student's level of functioning, set forth measurable annual goals, describe the services to be provided to the student, and establish objective criteria for evaluating the student's progress.

160. While a school district is not required to maximize the potential of a student, it must offer an IEP that is reasonably calculated to enable the student to obtain significant learning as gauged in relation to his or her potential.

161. The Third Circuit Court of Appeals has observed that the proper inquiry is not a comparison of the programming and benefits available between two schools or that an offered IEP measures up to the private school selected by the parents.

162. Events which occurred months or years before placement decisions are made cannot be substituted for the threshold determination of a "reasonable calculation" of educational benefit analysis.

163. The standard to be employed in measuring an IEP is not

whether the student will "thrive," but rather whether the IEP will provide a program in which the student is likely to make meaningful educational progress.

164. It was error for the ALJ to judge the IEP by a standard requiring the student to "thrive."

165. In indicating that Academy 360 was "more of" a "cognitive program," the ALJ employed an incorrect standard by comparing the school recommended by the District to the school requested by the Parent.

166. In reciting the thorough and efficient standard rather than undertaking the painstaking, individualized analysis of the student's educational needs and the January 2021 IEP that provided for those needs, the ALJ erred as a matter of law.

## FOURTH COUNT

**The ALJ failed to carry out his fact-finding function.**

167. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 166 and incorporates same as if fully set forth herein.

168. The responsibility of a hearing officer is to make findings of fact and draw conclusions of law based upon those facts.

169. In a special education due process hearing challenging the program offered to a student, those findings of fact are to include, among others, a determination regarding the student's educational needs and a determination of whether the proposed IEP is designed to confer meaningful educational benefit on the student.

170. In the event that an IEP is found not to have been designed to confer a meaningful educational benefit on a student, the ALJ must set forth the manner in which the IEP was deficient.

171. By failing to identify T.R.'s educational deficits and needs, the ALJ was without the requisite factual basis for determining the appropriateness of the January 2021 IEP.

172. Additionally, the Decision is void of any analysis as to the manner in which the January 2021 IEP was deficient.

173. In concluding that the School District failed to offer T.R. FAPE, the ALJ erroneously substituted his own judgment for that of the Board's experts with respect to T.R.'s educational needs, the requisite services, and the appropriateness of the IEP offered by the Board.

## FIFTH COUNT

**The ALJ ignored the proffered testimony of experts and substituted his judgment for that of educational professionals when determining that the January 2021 IEP failed to offer FAPE.**

174. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 173 and incorporates same as if fully set forth herein.

175. Courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy and must take care to avoid imposing their view of preferable educational methods upon school officials.

176. The Supreme Court has admonished judges not to substitute their own judgment about educational practices for the judgment of education professionals.

177. In relying solely on the testimony of lay witnesses to establish that the January 2021 IEP failed to provide FAPE, the ALJ erred as a matter of law by imposing his own judgment for that of the experts, educators whose testimony he found credible.

## SIXTH COUNT

**The ALJ erred in concluding that Academy 360 was appropriate in the absence of any competent evidence.**

178. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 177 and incorporates same as if fully set forth herein.

179. While the rules of the New Jersey Office of Administrative Law provide that hearsay evidence is admissible pursuant to the "residuum rule," some competent evidence must be presented to support each finding of fact made by an administrative law judge.

180. There existed no procedural bar which would have precluded Defendant from offering testimony from any representative of Academy 360 to authenticate the "brochure" or "website printout" admitted into evidence.

181. The ALJ erred in admitting the "brochure" into evidence without the requisite foundation.

182. There existed no procedural bar which precluded Defendant from offering testimony from any representative of Academy 360 describing the programming that could be provided to T.R. at Academy 360.

183. The ALJ erred by relying upon hearsay evidence, without any residuum of competent evidence, to establish the appropriateness of Academy 360.

184. The ALJ failed to make any findings of fact relative to the specific program that T.R. would receive at Academy 360.

185. The ALJ failed to make any findings of fact relative to how T.R.'s educational needs would be met at Academy 360.

186. The ALJ erred in concluding that Academy 360 was an appropriate placement for T.R., as that determination is not supported by the evidence presented in the record.

<u>**SEVENTH COUNT**</u>

**The ALJ erred in ordering "compensatory education" in the absence of any finding of a deprivation of educational benefit.**

187. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 186 and incorporates same as if fully set forth herein.

188. A school district that knows or should have known that a student's IEP is inappropriate or that a student is not receiving more than a *de mimimis* educational benefit must correct the situation.

189. In the event that a school district fails to make such

an adjustment, a disabled child may be entitled to compensatory education "to make up for the child's lost progress" and restore the child to where the student would have been but for the deprivation.

190. In finding that a student is entitled to compensatory services, the hearing officer must determine the impact, if any, of the deprivation of services, upon the student's educational progress.

191. In finding that a student is entitled to compensatory services, a hearing officer must determine when the school district knew or should have known that the proffered IEP failed to provide a student with FAPE and must determine the period of time in which the student was deprived of FAPE.

192. As there was no time in which T.R. was without access to her educational programming, the ALJ erred when he determined that the Board denied educational services to T.R. for a "four month" period between the Defendant's request to return T.R. to her prior teacher's classroom and when that transfer occurred.

193. As there was no record evidence which suggested, much less established, any time period during which T.R. was without services, the ALJ's determination that T.R. was without services for a "four month" period is arbitrary and erroneous.

194. The Decision is in further error as it contains no determination as to those services of which T.R. was deprived.

195. The ALJ further erred by failing to make any determination of the impact that any such deprivation had on the student.

196. The ALJ's conclusion that T.R. was entitled to compensatory services was based on solely on his belief that the District "for some time neglected T.R.'s actual needs" although he made no determination as to either the period of time that the Board did not offer services or the impact of any such lost services upon T.R.'s educational functioning.

197. In fact, the ALJ found that there was "no way" to measure T.R.'s regression or lack of progress.

198. Without the requisite factual basis, and no record evidence to support a finding that would permit a determination that T.R. was actually without educational services, and the period of time that T.R. was without educational services, and with no record evidence that it was a failure by the Board to provide those services, or the impact of any such deprivation upon T.R.'s educational programming, the ALJ erroneously concluded that T.R. was owed compensatory services.

## EIGHTH COUNT

**The ALJ did not act as an impartial hearing officer and predetermined the matter prior to receipt of the entire record.**

199. Plaintiff repeats and reiterates the allegations set forth in Paragraphs 1 through 198 and incorporates same as if fully set forth herein.

200. A fair trial in a fair tribunal is a basic requirement of due process which applies to administrative agencies which adjudicate matters the same as it applies to courts of record.

201. Bias on the part of an ALJ undermines the fairness of the administrative process.

202. ALJs must consider the entirety of a record and may not cherry pick only evidence that supports their ultimate decision.

203. The ALJ's actions which preceded the hearing, specifically ordering the School District to send records on Defendant's behalf and further ordering the School District to switch T.R.'s classroom, demonstrate a clear bias in favor of Defendant.

204. Further, by questioning witnesses on behalf of the Defendant and attributing Defendant's failure to call witnesses

to the Board, the ALJ demonstrated a bias in favor of Defendant.

205. By ignoring the testimony of the six expert witnesses who testified in support of the Board's position and excusing Defendant from the requirement to present competent evidence in support of her position, the ALJ's Decision is arbitrary and without any rational basis.

206. The ALJ's reference to the School District as an Abbott District, coupled with his assumption, not supported by any record evidence, that Defendant could not obtain their own experts due to insufficient financial means, with no evidence of such inability in the record, and stating that "this reality" cannot "be held against the [Parent]" clearly demonstrates that the ALJ's Decision was based, not on the factual record in front of him, but on his commitment to afford the Defendant some form of relief regardless of the merits of her position and regardless of the evidence presented.

207. The ALJ's bias undermined the fairness of the proceedings and resulted in an improper, and wholly unsupported, decision.

**WHEREFORE,** Plaintiff demands judgment reversing the September 3, 2021 decision of ALJ Baron, awarding the Board attorneys' fees and costs of suit, and granting such further relief as the Court deems appropriate.

SCHENCK, PRICE, SMITH & KING, LLP
Attorneys for NEWARK BOARD OF EDUCATION

By: _Katherine A. Gilfillan_
        Katherine A. Gilfillan

Dated:    December 7, 2021